IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **SONS OF CONFEDERATE VETERANS, VIRGINIA DIVISION,** | ) ) ) | Civil Action No. 7:12cv00013 |
| Plaintiff, | ) ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) ) | |
| CITY OF LEXINGTON, VIRGINIA *et al.*, | ) ) ) | |
| | ) | **By: Samuel G. Wilson** |
| Defendants. | ) | **United States District Judge** |

In November of 2010, the Virginia Division of Sons of Confederate Veterans ("SCV")

sought to attach the Confederate flag to city-owned flag poles in Lexington, Virginia.  Nine

months after SCV received the City's permission to do so, and eight months after Confederate

flags flew over the City of Lexington, the City passed an ordinance restricting the flag poles to

all but the United States flag, the Virginia flag, and the Lexington city flag.  SCV claims the

City's new ordinance violates the First Amendment to the United States Constitution and a 1993

court order enjoining the City from interfering with SCV's Confederate flag displays.  SCV

therefore brings this action pursuant to 42 U.S.C. § 1983 (2006) against the City and various

members of the City's government (collectively, "the City"), seeking damages, equitable relief,

and a finding of contempt.  The City has moved for dismissal under Federal Rule of Civil

Procedure 12(b)(6).  For its part, the City contends that the flags it flies constitute government

speech and that the flag poles are a nonpublic forum.  In the alternative, the City argues, it has

constitutionally closed a public forum by passing a reasonable ordinance that restricts all private

access to the flag poles without regard to viewpoint or content.  Taking the alleged facts as true

and viewing them in the light most favorable to SCV, the court agrees with that argument and

will grant the City's motion to dismiss.

## I.

SCV is a fraternal organization open to male descendants of Civil War soldiers who

fought for the Confederate States of America.  The City of Lexington is a small municipality in

the Shenandoah Valley of Virginia, and the home of Washington and Lee University and the

Virginia Military Institute.  The parties' first encounter in this court occurred in 1993, when SCV

claimed the City had prohibited it from carrying Confederate flags during the rededication of a

100-year-old statue of General Thomas "Stonewall" Jackson, in violation of the First

Amendment to the United States Constitution.  On August 10th of that year, this court entered a

consent decree in the dispute, enjoining the City and its agents from abridging SCV's right to

> wear, carry, display, or show, at any government-sponsored or government-
> controlled place or event which is to any extent given over to private expressive
> activity, the Confederate Flag or other banners, emblems, icons, or visual
> depictions designed to bring into public notice any logo of "stars and bars" that
> ever was used as a national or battle flag of the confederacy.

(Compl. Ex. A, E.C.F. No. 1-1.)

SCV held onto the court's order until early 2010, when it began to organize a parade

through the City of Lexington, the route of which SCV intended to line with various Confederate

flags.  In November of 2010, SCV formally asked the City for permission to attach Confederate

flags to the city-owned flag poles affixed to the City's street lights.  SCV's request was not

without precedent—Washington and Lee University, Virginia Military Institute, and the Kappa

Alpha fraternity had all requested and received the City's permission to temporarily fly

representative flags from the very same flag poles.  Pursuant to past practice, the Lexington City

Council approved SCV's request, with only one of six votes dissenting.  A few weeks later, City

Councilman Bob Lera, the dissenting vote, made a unanimously adopted motion for the City to

institute a "flag policy."  City Council then charged the City Manager and City Attorney with

developing a flag policy, took public comment on the matter, and finally enacted a flag policy by

amending § 205 of chapter 420 of the Lexington City Code.  The new ordinance reads as

follows:

> **C.** Flags.
> **(1)** Only the following flags may be flown on the flag standards affixed to light
> poles in the City and no others:
>> **(a)** The national flag of the United States of America (the "American
>> flag").
>> **(b)** The flag of the Commonwealth of Virginia, Code of Virginia, Title 1,
>> Chapter 5.
>> **(c)** The City flag of Lexington.
> **(2)** The American flag, the flag of the Commonwealth of Virginia and the City
> flag of Lexington may be flown by the City on the light poles that have flag
> standards affixed to them on dates adopted by City Council.  A copy of the
> dates for the flying of said flags is available through the City Manager's
> office or the office of the Director of Public Works.  Currently the holidays
> or designated days are as follows: Independence Day, Labor Day, Veterans
> Day, Flag Day, Martin Luther King Day, Memorial Day, Lee-Jackson Day,
> Presidents Day, and on the day of the annual Rockbridge Community
> Festival.  On such dates or days the flag(s) may be flown for more than one
> day.  No other flags shall be permitted.  Nothing set forth herein is intended
> in any way to prohibit or curtail individuals from carrying flags in public
> and/or displaying them on private property.

Lexington, Va., Code § 420-205.  Under the terms of the ordinance, SCV and all other private

organizations would be prohibited from flying flags from the City's flag poles.  Having flown

Confederate flags from Lexington's flag poles only months before, and hoping to do it again,

SCV responded to the City's new policy by filing this lawsuit.

## II.

The City contends that its flag poles have always been a nonpublic forum, subject only

to the least measure of constitutional scrutiny.  According to SCV, however, its complaint

alleges facts showing that the City established a public forum by allowing private entities to use

the City's flag poles, and then closed the forum in order to silence SCV's message.  This

"viewpoint-based closure[]," SCV argues, violates the First Amendment.  The court finds that

the City's alleged motivation in closing the forum does not override the facially content-neutral

character of the City's new ordinance.  And, because the City's decision to close the forum was

eminently reasonable, the City has not violated the First Amendment.  Accordingly, the court

will grant the City's motion to dismiss.[1]

The Supreme Court has delineated three basic categories of fora.  Traditional public fora

comprise those areas, such as streets, sidewalks, and parks, that "have immemorially been held in

trust for the use of the public and, time out of mind, have been used for purposes of assembly,

communicating thoughts between citizens, and discussing public questions."  Perry Educ. Ass'n

v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983) (citations omitted) (internal quotation

marks omitted).  The Supreme Court has been fairly reluctant to extend the concept, "reject[ing]

the view that traditional public forum status extends beyond its historic confines."  Ark. Educ.

Television Comm'n v. Forbes, 523 U.S. 666, 678 (1998); see also United States v. Am. Library

Ass'n, Inc., 539 U.S. 194, 206 (2003) ("The doctrines surrounding traditional public forums may

not be extended to situations where such history is lacking.").  The government's ability to limit

expressive activity in a traditional public forum is, of course, "sharply circumscribed."  Perry,

460 U.S. at 45.

A *non*public forum is public property "which is not by tradition or designation a forum

for public communication."  See Child Evangelism Fellowship of Md., Inc. v. Montgomery

---

[1] To state an adequate claim for relief, the pleadings must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (citation omitted).  While the court must accept the claimant's factual allegations as true, Hemi Grp., LLC v. City of N.Y., 130 S. Ct. 983, 986–87 (2010), this tenet is "inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

Cnty. Pub. Schs., 457 F.3d 376, 381 (4th Cir. 2006) (quoting Perry, 460 U.S. at 46.). The government may prohibit or restrict speech in a nonpublic forum so long as the restriction is reasonable and content neutral. USPS v. Council of Greenburgh Civic Ass'ns, 453 U.S. 114, 131 n.7 (1981). "The Government's decision to restrict access to a nonpublic forum need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation." Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 808 (1985).

Designated public fora and limited public fora are hybrids of the previous two, created when the government voluntarily, affirmatively opens an otherwise-closed forum to expressive conduct. Child Evangelism Fellowship, 457 F.3d at 382 (citing Cornelius, 473 U.S. at 802). As long as the government maintains the open character of a designated public forum, it is subject to a heightened level of First Amendment protection.[2] However, "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." Council of Greenburgh Civic Ass'ns, 453 U.S. at 129. As such, the government "is not required to indefinitely retain the open character of the facility," and may indeed close the forum as it sees fit. Cornelius, 473 U.S. at 802 (quoting Perry, 460 U.S. at 46); see also Santa Monica Food Not

---

[2] The terms "designated public forum" and "limited public forum" have generally been employed interchangeably. Compare Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829 (1995), with Am. Library Ass'n, 539 U.S. at 206–07. The Supreme Court, however, has recently drawn a distinction. See Christian Legal Soc. Chapter of the Univ. of Cal., Hastings College of the Law v. Martinez, 130 S. Ct. 2971, 2984 n.11 (2010); see also Child Evangelism Fellowship of Md., Inc. v. Montgomery Cty. Pub. Schs., 457 F.3d 376, 382 (4th Cir. 2006) (anticipating the distinction).

In a designated public forum, "government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose." Christian Legal Soc., 130 S. Ct. at 2984 n.11. In these fora, regulations on speech "are subject to the same strict scrutiny as restrictions in a traditional public forum." Id. (quoting Pleasant Gove City v. Summum, 555 U.S. 460, 470 (2009)). And limited public fora are established when a governmental entity opens property but limits it to use by certain groups or dedicates it solely to the discussion of certain subjects. Id. "In such a forum, a governmental entity may impose restrictions on speech that are reasonable and viewpoint-neutral." Id.

This distinction drawn, the Circuit Courts of Appeals generally hold that the limited public forum is a subset, or subtype, of the designated public forum. See Child Evangelism Fellowship, 457 F.3d at 382 n.3 (citing Bowman v. White, 444 F.3d 967, 976 (8th Cir. 2006); Make the Rd. by Walking, Inc. v. Turner, 378 F.3d 133, 143 (2d Cir. 2004); Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211, 225 (3d Cir. 2003); Chiu v. Plano Indep. Sch. Dist., 260 F.3d 330, 346 n.12 (5th Cir. 2001); Hopper v. City of Pasco, 241 F.3d 1067, 1074 (9th Cir. 2001); Chabad-Lubavitch of Ga. v. Miller, 5 F.3d 1383, 1391 n.13 (11th Cir. 1993).

Bombs v. City of Santa Monica, 450 F.3d 1022, 1032 (9th Cir. 2006) (explaining that the plaintiff's challenge to an ordinance was no longer viable because the defendant city had recently prohibited all private parties from putting up street banners and had limited such "bannering" to the city itself, thereby closing the public forum in which plaintiffs sought to exercise First Amendment rights); Ridley v. Mass. Bay Transp. Auth., 390 F.3d 65, 77 (1st Cir. 2004) ("The government is free to change the nature of any nontraditional forum as it wishes."); Currier v. Potter, 379 F.3d 716, 728 (9th Cir. 2004) (noting that the government may close a designated public forum "whenever it wants"); Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 143 (2d Cir. 2004) ("Furthermore, the government may decide to close a designated public forum."); Shopco Distribution Co. v. Commanding Gen. of Marine Corps Base, Camp Lejeune, N.C., 885 F.2d 167, 173 (4th Cir. 1989) ("Even assuming *arguendo* that the Commanding General did . . . change Camp Lejeune housing areas from non-public to public forums, he 'is not required to indefinitely retain the open character of the facilit[ies].'" (quoting Perry, 460 U.S. at 46)); U.S. v. Bjerke, 796 F.2d 643, 647 (3rd Cir. 1986) ("[O]fficials may choose to close such a designated public forum at any time.").

Motive is a central issue in certain constitutional inquiries when government action has a discriminatory effect.[3]  And, "[t]o be sure, if a governmental regulation is based on the content of the speech or the message, that action must be scrutinized more carefully to ensure that communication has not been prohibited 'merely because public officials disapprove the speaker's view.'" Council of Greenburgh Civic Ass'ns, 453 U.S. at 132 (quoting Consol. Edison

---

[3] There are a number of constitutional claims in which motive is a necessary (though not necessarily sufficient) inquiry, "such as claims of race and gender discrimination in violation of the Equal Protection Clause, cruel and unusual punishment in violation of the Eighth Amendment, and termination of employment based on political affiliation in violation of the First Amendment." Crawford-El v. Britton, 523 U.S. 574, 585 (1998) (footnote call numbers omitted).  The issue also may be central to Establishment Clause analyses. See, e.g., Salazar v. Buono, 130 S. Ct. 1803, 1816 (2010).  Here, there are no allegations that the ordinance has a discriminatory effect.  Nor would such an allegation be contextually plausible.

Co. v. Pub. Svc. Comm'n, 447 U.S. 530, 536 (1980)).  However, when a regulation plainly

prohibits all expression in a nonpublic forum and has no discriminatory effect, the government's

particular motivation in enacting the regulation is immaterial.  See Hill v. Colorado, 530 U.S.

703, 724 (2000) ("[T]he contention that a statute is 'viewpoint based' simply because its

enactment was motivated by the conduct of the partisans on one side of a debate is without

support."); Grossbaum v. Indianapolis-Marion Cnty. Bldg. Auth., 100 F.3d 1287, 1290 (7th Cir.

1996) ("[W]e hold that the motive of a government body is irrelevant when it enacts a content-

neutral rule that regulates speech in a nonpublic forum . . . .").[4]

      With that in mind, and viewing the allegations in the light most favorable to SCV (as it

must on a motion to dismiss), the court turns to the facts of this case and finds that the City has

constitutionally closed a designated public forum.  SCV appears to concede that the flag poles

are not a traditional public forum, and there can be no serious argument on the issue.  See Am.

Library Ass'n, 539 U.S. 194, 206 (2003) ("The doctrines surrounding traditional public forums

may not be extended to situations where such history is lacking."); Members of the City Council

of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 814 (1984) (rejecting, because of the absence of

"a traditional right of access," the claim that government-owned utility poles are traditional

public fora).  Still, the parties disagree on the flag poles' appropriate classification:  SCV argues

the City opened a public forum when it allowed private flags to fly from the City's flag poles,

and the City argues the flag poles are best described as a nonpublic forum.  Viewing the facts in

---

[4] See also Conroy v. Aniskoff, 507 U.S. 511, 519 (1993) (Scalia, J., concurring) ("We are governed by
laws, not by the intentions of legislators."); United States v. O'Brien, 391 U.S. 367, 383 (1968) ("[I]t is a familiar
principle of constitutional [free speech] law that this Court will not strike down an otherwise constitutional statute
on the basis of an alleged illicit legislative motive."); Laurence H. Tribe, The Mystery of Motive, Private and Public:
Some Notes Inspired by the Problems of Hate Crime and Animal Sacrifice, 1993 Sup. Ct. Rev. 1, 29 (1993) ("[A]
facially neutral government action that does not in fact . . . violate anyone's constitutional rights . . . should not be
rendered unconstitutional, or even suspect, just by virtue of the factors considered by, or the attitudes or intentions
held by, the public officials responsible for that action . . . .").

the light most favorable to SCV, the court proceeds under the assumption that the City created a

designated public forum when it allowed private entities to fly their flags from city-owned flag

poles.

Proceeding under that assumption, SCV's factual allegations show that the City

positively and constitutionally closed the forum when it amended City Ordinance § 420-205.

The ordinance states:

> **(1)** Only the following flags may be flown on the flag standards affixed to light
> poles in the City and no others:
>> **(a)** The national flag of the United States of America (the "American
>> flag").
>> **(b)** The flag of the Commonwealth of Virginia, Code of Virginia, Title 1,
>> Chapter 5.
>> **(c)** The City flag of Lexington.

§ 420-205.  Thus, by the ordinance's plain language, the City has closed the flag poles to

private expressive conduct.  Again, SCV concedes the point: "By enacting § 420-205, the

City essentially closed the forum for expression that previously existed with respect to

the flag standards."  (Pl.'s Resp. 7, E.C.F. No. 21.)  The only remaining questions,

therefore, are whether the ordinance is content neutral, and whether it is reasonable.  It is

both.

The ordinance is content neutral because it makes no distinction as to viewpoint

or subject matter and advances no particular position.  Rather, on its face, the ordinance

prohibits the expression of *all* private viewpoints and instead reserves government flag

poles for government flags.  *No* private entity may attach its flag to the City's flag poles.

There is simply no question that the ordinance does not regulate expression on the basis

of content.  Absent some discriminatory effect, allegations regarding the City's

motivation in enacting the ordinance do not alter the court's analysis.[5]

The question of reasonableness is no less certain.  First, allowing a city-owned

flag pole to serve as a public forum could suggest the government has placed its

imprimatur on private expression.  The Constitution does not compel a municipality to

provide its citizens a bully pulpit, but rather requires it to refrain from using its own

position of authority to infringe free speech.  Second, there are highly compelling

practical reasons for a city to close its flag poles to private expression.  The city that

cracks the door to private expression on flag poles practically *invites* litigation from other

groups whose messages it would rather not hoist above the city.  Related to that point,

private expression might eventually so dominate city flag poles as to swallow whole the

flag poles' actual, official purposes.  Third, and finally, the ordinance in this case leaves

ample opportunity for SCV and every other group to display the flags of their choice.

That is true by the ordinance's own terms: "Nothing set forth herein is intended in any

way to prohibit or curtail individuals from carrying flags in public and/or displaying them

on private property."  § 420-205(C)(2).  SCV and other groups may therefore carry their

flags in parades, fly them from the flag poles at their local offices, or wave them while

walking to the grocery store.  As such, the ordinance is perfectly reasonable.  Because

reasonable, nondiscriminatory, content-neutral rules regulating speech in nonpublic fora

---

[5] SCV cites no controlling precedent to the contrary.  But even if precedent required a "motivation inquiry," the court is wholly unconvinced that the allegations in the complaint illustrate any sort of improper motive.  The Rule 12(b)(6) standard, as interpreted by Twombly and Iqbal, require that the factual allegations in the complaint nudge the claims across the line from conceivable to plausible.  The facts in SCV's complaint show that the City has allowed several groups (including SCV) to fly private flags from city-owned flag poles.  That SCV was the last group in a line of several to get the City's permission to fly its flags, that a councilman who voted against SCV's application moved City Council to establish a flag policy, or that private citizens spoke out against City approbation of the Confederate flag, does not render plausible the theory that the City sought to silence SCV's message by enacting § 420-205.

9

pass First Amendment constitutional muster regardless of motive, the court will grant the City's motion to dismiss. [6]

## III.

SCV argues that the City has violated this court's 1993 order enjoining the City from abridging SCV's right to display Confederate flags. Having decided that the City has not abridged SCV's constitutional rights, the court also decides the City has not violated the 1993 consent decree.

## IV.

No court has found that the Constitution compels the government to allow private-party access to government flag poles. The facts of this case do not demand a novel result. For the reasons stated, the court will grant the City's motion to dismiss.

**ENTER**: June 14, 2012.

s/ SAMUEL G. WILSON
UNITED STATES DISTRICT JUDGE

---

[6] The court is unable to say at this stage in the litigation, viewing the facts in the light most favorable to SCV, that the City did not make the flag poles "generally available" and thereby open them as a designated public forum. See Forbes, 523 U.S. at 678–79. Likewise, although this case seems to have all the hallmarks of one involving government speech, see Pleasant Grove, 555 U.S. 460, the court is presently unable to say with certainty that the City was expressing its own viewpoint when it first undertook to fly private flags from city-owned flag poles. In any event, nothing in this opinion is intended to indicate that the City would not be engaging in government speech and advancing its own interests by choosing to fly those flags.